# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JOSEPH F. KEATING and MARIE L. KEATING,**

        Plaintiffs,

**v.**                                           **Case No: 6:12-cv-220-Orl-28GJK**

**INGERSOLL-RAND COMPANY,**

        Defendant.

## REPORT AND RECOMMENDATION

This cause came on for consideration, after oral argument, on the following motion:

> **MOTION:** PLAINTIFF'S MOTION TO REMAND; AND/OR TO JOIN NON-DIVERSE DEFENDANT, AIR CENTERS OF FLORIDA, INC., AND REMAND AND INCORPORATED MEMORANDUM OF LAW (Doc. No. 19)
>
> **FILED:** May 17, 2012
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

### I. FACTUAL BACKGROUND

#### A. Procedural Background

On October 14, 2011, Plaintiffs, Joseph F. Keating and Marie L. Keating, filed their Complaint in the Eighteenth Judicial Circuit in and for Brevard County, Florida. Doc. No. 4. Plaintiffs allege that they are residents of Brevard County, Florida, and Defendant, Ingersoll-Rand Company, is a foreign corporation that manufactures, distributes, and repairs commercial

air compressors throughout Florida and the United States. Doc. No. 4 at 1 ¶¶ 2-3.[1] Plaintiffs have been married since April 1981. Doc. No. 4 at 1 ¶ 4. On October 30, 2009, Mr. Keating was employed by Space Coast Launch Services, LLC, as a mechanical engineer, working at the Cape Canaveral Air Force Station. Doc. No. 4 at 2 ¶ 5.

Defendant manufactured a commercial air compressor (hereafter "IR air compressor"), bearing Model UFD-3, XLE S/N JH-7339, that was installed at the Cape Canaveral Air Force Station. Doc. No. 4 at 2 ¶ 6. The IR air compressor "had not been altered in any way other than the installation of repair/replacement kits for routine maintenance" that were manufactured and provided by Defendant. Doc. No. 4 at 2 ¶ 6. On October 30, 2009, Mr. Keating was inspecting the IR air compressor when "without warning or any change in demand the compressor loading system shot to 100% and caused the relief valve to blow in excess of 120 psi at 740 cubic feet per minute," resulting in personal injury. Doc. No. 4 at 2 ¶¶ 7-8. The IR air compressor was "defective in design and operation such that the free air regulator failed causing the explosion. Further, the unloader valve sleeves were negligently designed and/or manufactured resulting in the failure of the regulator or otherwise contributing to the malfunction of the compressor." Doc. No. 4 at 3 ¶ 9. Based on these allegations, Plaintiffs assert three claims.

In Count I, Plaintiffs assert a products liability claim on the basis that the IR air compressor was negligently designed and/or maintained. Doc. No. 4 at 3. In Count II, Plaintiffs assert a claim for strict liability. Doc. No. 4 at 4. In Count III, Plaintiffs assert a claim for loss of consortium on behalf of Ms. Keating. Doc. No. 4 at 5.

On February 7, 2012, Defendant filed its answer and eight affirmative defenses. Doc. No. 6. Defendant asserts comparative negligence, assumption of risk, collateral source payments, material modification of the IR air compressor, misuse or abuse of the IR air

---

[1] The facts stated below are based on the allegations in the Complaint.

compressor, the statute of repose and third party negligence as defenses. Doc. No. 6 at 3-5. On February 20, 2012, Defendant removed Plaintiffs' case to this Court on the basis of diversity jurisdiction. Doc. No. 1. On May 8, 2012, the Court entered its case management and scheduling order, which set July 6, 2012, as the deadline to amend pleadings or add parties. Doc. No. 17.

### B. Plaintiff's Motion to Remand

On May 17, 2012, Plaintiffs moved to remand the case to state court (hereafter "Motion") on the basis that Defendant failed to show their case met the amount in controversy requirement. Doc. No. 19 at 1. Alternatively, Plaintiffs requested leave to add Air Centers of Florida, Inc. (hereafter "Air Centers"), and to remand because Air Centers is a non-diverse defendant whose joinder destroys diversity jurisdiction. Doc. No. 19 at 1. Plaintiffs' proposed amended complaint asserts claims of products liability and strict liability against Air Centers, and alleges that Air Centers "distributed, sold, installed, inspected and/or maintained" the IR air compressor "and/or parts and repair kits manufactured" by Defendant. Doc. No. 19 at 3 ¶ 7.[2] Plaintiffs also assert that the "facts may develop to show that Air Centers is at fault for the accident *to the exclusion of* [Defendant]." Doc. No. 19 at 7 ¶ 13 (emphasis in original).

Plaintiffs assert that their claims against Air Centers and Defendant are factually and legally intertwined, such that requiring them to maintain a parallel state court proceeding would be a waste of judicial resources. Doc. No. 19 at 7 ¶ 14. Plaintiffs also assert that they have not been dilatory in seeking to add Air Centers and that Defendant knew they intended to add Air Centers at the time Defendant filed its notice of removal. Doc. No. 19 at 7-8 ¶¶ 15-16. Plaintiffs

---

[2] The proposed amended complaint is attached to the Motion and was filed in state court, post-removal, on February 28, 2012. Doc. Nos. 19 at 3 ¶ 7; 19-5.

filed a supporting affidavit from their counsel, Steven W. Igou. Doc. No. 19-1. On June 25, 2012, Defendant filed its response to the Motion. Doc. No. 28.

In its response, Defendant attacks Mr. Igou's supporting affidavit as facially defective because he failed to provide any supporting facts to establish that Plaintiffs "could or do[] have any type of claim or cause of action against" Air Centers. Doc. No. 28 at 4. Defendant points out that Plaintiffs have indicated they do not possess any documents concerning the repair, maintenance or inspection of the IR air compressor. Doc. No. 28 at 5. Defendant also attaches an affidavit from Andrew J. Young, Air Center's President, which states that a search of Air Centers' records did not reveal any sales invoices for parts that would be compatible with the IR air compressor prior to the accident. Doc. No. 28-2. On October 10, 2012, Plaintiffs filed a reply which attached a supporting affidavit from Mr. Keating. Doc. Nos. 38; 38-1.

### C. Evidentiary Hearing on the Motion

On June 25, 2012, Defendant moved for oral argument and an evidentiary hearing on the Motion. Doc. No. 29. Because the parties' supporting affidavits were conflicting, the Court granted this motion and conducted an evidentiary hearing on October 30, 2012, solely to address Plaintiffs' request to add Air Centers as a non-diverse defendant. Doc. Nos. 39, 51.[3] At the hearing, Messrs. Keating, Igou, Young and Terry Adams testified. Doc. No. 51.

Mr. Keating testified that he was involved with the maintenance of the IR air compressor during his employment and knew Air Centers to be "IR Air Centers" with offices in Tampa and Orlando. Doc. No. 51 at 8, 12.[4] Mr. Keating testified that only original manufacturer parts from

---

[3] At the hearing, Plaintiffs abandoned their argument regarding the amount in controversy requirement. Doc. No. 51 at 2-3.

[4] Mr. Keating testified that "IR" stood for Ingersoll-Rand and that he only learned Air Centers was a separate entity from Defendant after this litigation commenced. Doc. No. 51 at 11-12.

Defendant are permitted to be used on the IR air compressor and Air Centers is the only supplier of these parts. Doc. No. 51 at 10, 34. Mr. Keating testified that a mechanic, Kelvin DeWeese, and the facilities manager, Dave Crockett, told him that a regulator rebuild kit, bearing part number W127344, was purchased from Air Centers and installed on the IR air compressor in 2004 or 2005. Doc. No. 51 at 30-31. Mr. Keating testified that, after the accident, he was present when Jeff Gross called Air Centers to obtain the part number so a new regulator rebuild kit could be ordered from Air Centers. Doc. No. 51 at 32. Mr. Keating also testified that he was personally told by an Air Centers' representative that Air Centers is the exclusive distributor of Ingersoll Rand parts in that region. Doc. No. 51 at 33-34.

Mr. Keating testified that Air Force regulations require eighteen percent (18%) of all items procured to be purchased from minority owned contractors, such as O.T. Trans, Pelican Sales or Genesis 7, and, as a result, sales invoices would not necessarily show Space Coast Launch Services as the buyer. Doc. No. 51 at 35. Thus, Mr. Keating suggested that documents reflecting the sale of parts for the IR air compressor from Air Centers would likely indicate sales to minority owned contractors, rather than Space Coast Launch Services. Mr. Keating admitted that he has no documents which show that a regulator rebuild kit was sold by Air Centers to Space Coast Launch Services. Doc. No. 51 at 46. Mr. Keating testified that a maintenance log is maintained that should show what vendors provided the parts at issue. Doc. No. 51 at 49. The maintenance log has not been produced despite his request for a copy. Doc. No. 51 at 49-50.

Mr. Igou testified that he did not know Air Centers was a separate entity from Defendant at the time he filed the Complaint. Doc. No. 51 at 62. Mr. Igou testified that during his investigation of the case, he learned that Air Centers was a seller or distributor and provided the information to Defendant's counsel prior to the case been removed. Doc. No. 51 at 64. Mr. Igou

also testified about the investigation, including serving subpoenas, that was conducted to determine Air Centers' involvement.[5] Doc. No. 51 at 65-68.

Mr. Young testified that Air Centers is the exclusive distributor of Ingersoll Rand parts for the Space Coast area. Doc. No. 51 at 74. Mr. Young testified that Air Centers was incorporated in 1987 and the company that previously operated at its current location was Ingersoll Rand Air Centers. Doc. No. 51 at 75. Mr. Young testified that Air Centers keeps records for seven (7) years and they were searched for sales relating to approximately twenty (20) companies, whose names were provided by Defendant's counsel. Doc. No. 48. In addition to searching by company name, Mr. Young testified that Air Centers' records were searched for part numbers 37153301 and W127344. Doc. No. 51 at 79-80, 87-88. Mr. Young testified that the records search revealed the sale of one regulator rebuild kit, compatible with the IR air compressor, to O.T. Trans that was sold and delivered to Space Coast Launch Services after the accident at issue. Doc. No. 51 at 82. Mr. Young also testified that Ingersoll Rand parts can be purchased from multiple sources, not just from Air Centers. Doc. No. 51 at 81.

Mr. Adams, Defendant's vice-president of technical support, testified that Defendant's records were searched, dating back to 1994, for part numbers 37153301 and 37165750. Doc. No. 51 at 100-102.[6] Mr. Adams testified that Defendant sold air regulator kits to two Florida

---

[5] Mr. Igou testified that he served subpoenas on the Air Force for maintenance and service records for the IR air compressor. Doc. No. 51 at 61-62. Mr. Igou testified that he received some records that were responsive to the subpoenas, but the maintenance log was not included. Doc. No. 51 at 62. Mr. Igou testified that he has not moved to compel the production of the maintenance log because he was told the Air Force is making a good faith effort to comply with the subpoenas. Doc. No. 51 at 62.

[6] This search was embodied in a document that summarized all air regulator kits sold to Air Centers and Arle Compressor Systems from 1994 to 2012, and a spreadsheet that listed the air regulator kits, bearing part number 37153301, sold from 1994 to 2004. Doc. No. 51 at 102. Although Mr. Adams testified that he provided a spreadsheet showing the air regulator kits, bearing part number 37165750, to his counsel, no explanation was provided for why only one of the spreadsheets was presented at the hearing. Mr. Adams also testified that the spreadsheets identified some of the addresses of the ultimate end purchasers, but that information was not printed out. Doc. No. 51 at 105.

companies, Air Centers and Arle Compressor Systems, Corp. Doc. No. 51 at 102. Mr. Adams testified that three (3) air regulator kits, bearing part number 37153301, were sold to Air Centers in 2000 and 2001. Doc. No. 51 at 102. Mr. Adams testified that air regulator kits, bearing part number 37165750 and previously identified by Mr. Keating as part number W127344, were sold to Arle Compressor Systems, but none were sold to Air Centers. Doc. No. 51 at 103.[7] Mr. Adams testified that the only air regulator kits compatible with the IR air compressor at issue bear part number 37165750. Doc. No. 51 at 103. Yet, Mr. Adams testified that the regulator rebuild kit sold to O.T. Trans and delivered to Space Coast Launch Services after the accident was for part number 37153301. Doc. No. 51 at 111.

## II. LAW

After a case has been removed to federal court, a plaintiff must move to remand it to state court within thirty (30) days after the notice of removal is filed, unless the basis of the motion to remand is lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). If, after a case is removed to federal court, the plaintiff moves to add a defendant "whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. § 1447(e). Thus, there are only two options when faced with a motion to add a defendant whose joinder would divest the Court of subject matter jurisdiction: deny joinder or permit joinder and remand to the state court.

The Court should scrutinize a motion to join a non-diverse defendant because the "original defendant's interest in the choice of the federal forum" must be considered. *Linares v. Home Depot U.S.A., Inc.*, No. 12-60308-CIV, 2012 WL 1441577 at *1 (S.D. Fla. Apr. 26, 2012); *see also Duckworth v. State Farm Mut. Auto. Ins. Co.*, No. 6:07-cv-2014-Orl-22DAB, 2008 WL

---

[7] During his testimony, Mr. Adams acknowledged that the records showed multiple sales of air regulator kits, except for a period between 1995 and January 1, 1999, when only one air regulator kit was sold in 1997. Doc. No. 51 at 108. Mr. Adams could not explain why the records reflected such a variation.

495380 at *1 (M.D. Fla. Feb. 20, 2008). In ruling on a motion to join a non-diverse defendant, the following factors should be considered: 1) the extent to which the joinder motion was filed to defeat federal jurisdiction; 2) whether plaintiff has been dilatory in filing the joinder motion; 3) whether plaintiff will be significantly prejudiced if the joinder motion is denied; and 4) any other factor that bears on the equities. *Duckworth*, No. 6:07-cv-2014-Orl-22DAB, 2008 WL 495380 at *1.

### III. ANALYSIS

#### A. Fraudulent Joinder

In its response to the Motion, and at the hearing, Defendant acknowledged and addressed the factors outlined above and also argued that the Court should consider whether Plaintiffs' desire to join Air Centers is fraudulent. Doc. Nos. 28 at 16; 51. Defendant asserts that Plaintiffs' proposed joinder is fraudulent and Plaintiffs cannot prove a cause of action against Air Centers. Therefore, Defendant argues the Motion should be denied. Doc. No. 28 at 16.

Whether fraudulent joinder is a factor that should be considered when ruling on a post-removal motion to add a non-diverse defendant, whose joinder destroys the Court's diversity jurisdiction, is not settled in this district. Some courts have indicated that fraudulent joinder is a consideration in ruling on a post-removal motion to add a non-diverse party. *See Bechtelheimer v. Cont'l Airlines, Inc.*, 776 F. Supp. 2d 1319, 1321 (M.D. Fla. 2011); *Hacienda Village Homeowners Ass'n, Inc. v. Marsh, Inc.*, No. 2:10-cv-604-FtM-29DNF, 2011 WL 2893113 at *2 (M.D. Fla. July 20, 2011); and *Scipione v. Advance Stores Co., Inc.*, No. 8:12-cv-687-T-24-AEP, 2012 WL 3105199 at *3 (M.D. Fla. July 31, 2012). The court in *Graham v. Medtronic, Inc.*, No. 6:06-cv-948-Orl-19JGG, 2006 WL 4764431 (M.D. Fla. Oct. 4, 2006), determined otherwise.

In *Graham*, No. 6:06-cv-948-Orl-19JGG, 2006 WL 4764431 at *3, the Honorable Patricia Fawsett determined that the issue of fraudulent joinder is inapplicable to a post-removal motion to add a non-diverse party because the defendant has the opportunity to argue against joining the non-diverse party. *Id.* (quoting *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 678 (5th Cir. 1999)). Judge Fawsett noted that the Eleventh Circuit "has not extended the doctrine of fraudulent joinder to apply to the post-removal addition of resident defendants." *Id.* Judge Fawsett further noted that the Eleventh Circuit "has traditionally been hesitant to find fraudulent joinder in any situation" and other circuits "have specifically held that fraudulent joinder cannot be found in situations similar to the one presented here." *Id.*

The Court agrees with Judge Fawsett that fraudulent joinder is not an issue to be considered when ruling on a post-removal motion to join a non-diverse defendant. This conclusion is bolstered by the fact that determining whether joinder was fraudulent is "based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). The Court cannot evaluate whether Air Centers' proposed joinder is fraudulent because the operative Complaint at the time Defendant removed this case only asserts claims against Defendant. However, the Court will consider the evidence the parties have submitted on this issue in determining whether the Motion was filed to defeat federal jurisdiction.

### B. Motion to Join Air Centers

The Court found all of the witnesses who testified were credible. Nevertheless, the evidence presented was conflicting as to whether Air Centers supplied parts for the IR air compressor and neither party had direct knowledge of the source of supply for the parts at issue.[8]

---

[8] It appears the parties could have removed any doubt about whether Air Centers sold the parts that were used on the IR air compressor by obtaining the maintenance log kept by Space Coast Launch Services, which the parties

Mr. Keating testified that a mechanic told him that a regulator rebuild kit was purchased from Air Centers and installed on the IR air compressor in 2004, and that the part sales invoices would show the purchaser of parts was a minority owned contractor. It is also undisputed that Air Centers is the exclusive distributor of Ingersoll Rand parts for the Space Coast region. In contrast, Air Centers and Defendant's records searches, albeit only for certain years, suggest that Air Centers may not have been the source of such parts.[9]

Although conflicting, Air Centers and Defendant's records searches do not definitively override Mr. Keating's testimony. Air Centers' records only date back to 2005. Although Mr. Adams testified that the regulator rebuild kit, bearing part number 37153301, is not compatible with the IR air compressor at issue, Mr. Young testified that the regulator rebuild kit Air Centers sold to O.T. Trans, bearing part number 37153301, after the accident is compatible with the IR air compressor at issue. Thus, the evidence raises a dispute as to what parts are compatible with the IR air compressor. If Air Centers supplied parts that were installed on the IR air compressor prior to the date of the accident at issue and such parts contributed to the accident, Air Centers may have liability in this case and such evidence may also be relevant to Defendant's eighth affirmative defense of third party responsibility for the accident.[10] Mr. Keating's testimony provides credible support for the assertion of Plaintiffs' strict liability claim against Air Centers in the proposed amended complaint. Accordingly, it is **RECOMMENDED** that the Court find Plaintiffs are seeking to join Air Centers for legitimate purposes, rather than to defeat federal jurisdiction.

---

believe would show what maintenance, parts and vendors were used in connection with the IR air compressor.

[9] No testimony was provided regarding the completeness or accuracy of Air Centers or Defendant's records.

[10] *See Samuel Friedland Family Enters. v. Amoroso*, 630 So. 2d 1067, 1068 (Fla. 1994) (indicating that a claim for strict liability extends "to others in the distributive chain, including retailers, wholesalers, and distributors.").

In regard to whether Plaintiffs have been dilatory, Mr. Igou's testimony establishes that he did not know Air Centers was a separate entity from Defendant at the time the Complaint was filed and when he later discovered information implicating Air Centers as a seller or distributor he provided the information to Defendant's counsel prior to the case been removed. Mr. Igou also testified to the unsuccessful investigation that was conducted to obtain further information. No evidence was presented to rebut this testimony. The Court further notes that Plaintiffs filed the Motion prior to the deadline to join parties set forth in the Court's case management and scheduling order. *See* Doc. No. 17. Accordingly, it is **RECOMMENDED** that the Court find Plaintiffs have not been dilatory in filing the Motion.

It is also **RECOMMENDED** that the Court find Plaintiffs may be significantly prejudiced if the Motion is denied because they will be required to prosecute separate suits in federal and state court even though both arise out of the same underlying facts. This could subject Plaintiffs to inconsistent verdicts and would waste valuable judicial resources.[11] In contrast, Defendants have failed to show they will be prejudiced if the Motion is granted.

## IV. CONCLUSION

For all of the above-stated reasons, it is **RECOMMENDED** that the Motion be **GRANTED**, the case be remanded to state court and all pending motions be denied as moot.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

---

[11] The parties did not articulate any additional consideration that bears on the equities and, therefore, the Court will not address it.

**RECOMMENDED** in Orlando, Florida on November 16, 2012.

/s/ Gregory J. Kelly
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record